## A97A2578. BATCHELOR v. THE STATE.
### (494 SE2d 357)

MCMURRAY, Presiding Judge.

Defendant was charged in an indictment with two counts of burglary for twice unlawfully entering the dwelling of Michael Lay ("the victim") with the intent to commit a theft therein. The evidence adduced at his jury trial revealed that "shortly before noon . . ." on May 1, 1996, the victim's roommate, Raymond Kinchen, was home alone in their Grant Park residence, watching television in bed, when he "heard a truck pull up into the yard. [The] driveway goes up the

full extent of the property, and there's a parking area within 40 or 50 feet of the house. The bedroom is . . . on the left-hand side of the house." "The bedroom window was open." Kinchen "looked out the window, didn't recognize the truck or anything, [and] so . . . didn't go to the door when he[, i.e., the unknown truck driver,] knocked on the door." Kinchen identified defendant as the person he saw. Defendant "knocked on the door, waited for a few seconds, and [received] no answer. . . . He left the front door, walked around through the front yard to a side gate of the house, opened the gate, went through the backyard. . . . He went up to the laundry room door, [and] knocked on that door. . . . After he knocked on that door and went to the window, [defendant] then walked around to [another] door, knocked on that door." Defendant "again looked through the window, didn't see anyone, came onto the screened in porch which is right there beside that door, [and] raised a window which is the den window." Defendant "stuck his head in from . . . a little higher than chest up. At that point [Kinchen] was already on the phone to 911."

Kinchen "didn't know this person and if [he] had not invited someone onto [his] private property, they had no reason to be there." After defendant "stuck his head inside[, Kinchen] said, may I help you please. [Defendant] pulled his head out of the window, turned around and was proceeding to walk out of the screened in porch. . . . [F]rom the bedroom window, [Kinchen] could see the vehicle. [He] could see additional people inside the vehicle and the tag number of the vehicle." Kinchen "gave the operator the tag number."

Michael Lay testified that on the evening of May 11, 1996, he was on his sofa taking a nap when he was awakened by the sound of his dogs barking. Lay "got up off the sofa and walked to [his] kitchen." He saw "the defendant . . . coming out of [the victim's] office." Lay "yelled get the f--- out of my house as loud as [he] possibly could. . . ." Defendant said, "just the [person] I wanted to see and peeped his head back into the office, . . . and another blond headed guy, long blond hair, . . . came back out of [Lay's] office." Lay "started backing up. The blond headed guy . . . crossed in front of [Lay] and grabbed [Lay's] right side and was grabbing [Lay's] shoulder. [Defendant] then . . . was grabbing [Lay's] other arm and a struggle ensued." Lay picked up an ornamental "bust of David . . ." and swung at defendant. He then "picked up the chest that the bust was sitting on and shoved it into the actual chest of the blond headed gentleman."

Lay managed to get the front door opened and "yelled as loud as [he] could, help, call 9911 [sic], I'm being robbed, and then [he] took off running to [his] next door neighbor's house and called the police." Some other neighbors "were down the street in front of their home. . . . [Lay] yelled to them, get the tag number, they tried to rob

my house, they just robbed my house. . . ." Lay identified defendant as the darker-haired intruder.

Detective W. K. Bollinger of the City of Atlanta Police Department, Burglary Unit received both burglary reports. "On both instances they obtained the same tag number. The tag number came registered back to the same person, [defendant] in Forest Park." Detective Bollinger "went to Forest Park and rode by the address that came back from the tag. When [he] arrived at that location, rode by, the truck that was described in the police report and the tag number was at that address in the driveway." Detective Bollinger arranged a photographic lineup, from which array the victim picked defendant's photograph.

Defendant admitted being at the victim's residence on May 1, 1996, and on May 11, 1996. He defended on the ground that he was invited there to purchase marijuana. The jury found defendant guilty of criminal attempt to commit burglary for the May 1 incident (Count 1) and further found him guilty of burglary for the May 11 incident (Count 2). His amended motion for new trial was denied, and this appeal followed. *Held*:

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. . . ." OCGA § 17-8-57. In his sole enumeration of error, defendant contends the trial court erred in giving the following jury instruction: "That the defendant did not accomplish his *apparent purpose* would not necessarily prevent a finding of guilt of the offense of burglary." (Emphasis supplied.)

Defendant argues the emphasized portion of this instruction amounts to an improper comment on the evidence. The State correctly replies this language is verbatim from Part 4, Section F, Charge (2) of the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed.).

This instruction cites as authority *White v. State*, 7 Ga. App. 596 (67 SE 705) and *Daniel v. State*, 48 Ga. App. 789 (173 SE 485). Neither case employs the language "apparent purpose" in enunciating the legal proposition that completion of the allegedly intended crime is not necessary to establish a burglary so long as there is an unlawful entry with the requisite felonious intent. Id. at 789, hn. 4; *White v. State*, 7 Ga. App. 596 (2), supra. Nor does *Cooper v. State*, 69 Ga. 761 (1) (1882), as cited by both cases, employ such language. This language was, however, subsequently employed in opinions of this Court. See *Grice v. State*, 166 Ga. App. 706 (1), 707 (305 SE2d 438) and citations. "That this is so does not render such language necessarily appropriate for use in charging the jury. *Chedel v. Mooney*, 158 Ga. 297 (11) (123 SE 300); *Porter v. State*, 180 Ga. 147 (2) (178 SE

151)." *Jackson v. State*, 225 Ga. 553, 561 (7) (170 SE2d 281).

Accordingly, substitution of the term "alleged" for the ambiguous term "apparent" would obviate any contention that the charge intimates the defendant's guilt based upon conflicting evidence of criminal intent. But the precise instruction under consideration in the case sub judice was held to be a correct statement of the law and not to be argumentative in *Ricks v. State*, 178 Ga. App. 98, 101 (4) (341 SE2d 895). We decline to revisit that ruling and find it controlling in the case sub judice. Defendant's sole enumeration is without merit.

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED NOVEMBER 25, 1997.

*John R. Mayer*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Cari K. Johanson, Assistant District Attorneys*, for appellee.

